# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ASIA LEVIEV,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 5:25-cv-02954-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING THE DENIAL OF BENEFITS**<br><br>[Re: ECF Nos. 12, 13, 16] |

Plaintiff Asia Leviev ("Leviev") appeals a final decision of Defendant Commissioner of Social Security ("the Commissioner") denying her application for social security disability insurance benefits ("DIB") under Title II of the Social Security Act. ECF 1. Leviev asks the Court to reverse the Commissioner's decision and remand for payment of benefits or, alternatively, to remand for further administrative proceedings. Leviev filed a motion for summary judgment. *See* ECF 12-1 ("Mot."). The Commissioner filed an opposition. *See* ECF 13 ("Opp."). Leviev filed a reply. *See* ECF 16 ("Reply").

For the reasons discussed below, the Court DENIES Leviev's motion and AFFIRMS the denial of benefits.

**I.　BACKGROUND**

Leviev was born on October 26, 1968, and was fifty-two at the time of her alleged onset date. Admin. Record ("AR") 196. She has at least high school education and has past work as a registered nurse. AR 54. On May 18, 2022, Leviev filed her Title II application for DBI benefits. AR 196-97. She claimed disability beginning on March 1, 2021, due to a combination of impairments which included pseudotumor cerebri/idiopathic intracranial hypertension, chronic pain syndrome, Tarlov cysts, degenerative disc disease of the cervical spine, osteoarthritis and hallux

valgus and plantar fasciitis of the feet, and common variable immunodeficiency. AR 29. Leviev meets the insured status requirement of the Social Security Act through December 31, 2026. AR 29.

Leviev's application was denied initially and upon reconsideration. AR at 82, 102. A telephone hearing before an administrative law judge ("ALJ") was held on February 6, 2024, at which Leviev and a vocational expert testified. AR 47.

The ALJ issued a written decision on March 13, 2024. AR 40. The ALJ found that Leviev was not disabled at any time through the date of decision and denied benefits on that basis. *Id.* On March 4, 2025, the Appeals Council denied Leviev's request to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. AR 1.

## II.     LEGAL STANDARD

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), district courts have the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir.1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir.2000).

2

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks and citation omitted).

### B. Standard for Determining Disability

A claimant seeking DIB under Title II must establish disability on or prior to the date last insured. *Deckard v. Saul*, 2020 WL 1157026, at *2 (N.D. Cal. Mar. 10, 2020); *see Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1460 (9th Cir. 1995). Determination of the date last insured involves a calculation of the number of quarters the claimant was employed within a certain time frame. *See* 42 U.S.C. § 423.

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation marks and citations omitted). The residual functional capacity ("RFC") referenced at step four is what a claimant can still do despite his or her limitations. *Id.* at 1160 n.5. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

### III. DISCUSSION

The Court first summarizes the ALJ's decision denying benefits. The Court then addresses Leviev's challenges to the ALJ's decision and the Commissioner's response thereto.

### A. ALJ's Determinations

At step one, the ALJ found that Leviev had not engaged in substantial gainful activity ("SGA") since March 1, 2021, the alleged onset date. AR 29.

3

At step two, the ALJ found that Leviev had the following severe impairments: "pseudotumor cerebri/idiopathic intracranial hypertension; chronic pain syndrome; Tarlov cysts; degenerative disc disease of the cervical spine; osteoarthritis and hallux valgus and plantar fasciitis of the feet; and common variable immunodeficiency." AR 29. The ALJ also noted that Leviev had been diagnosed with other conditions that were "not shown to be severe durationally or effect the claimant's ability to perform basic work activities more than minimally." AR 29-31.

At step three, the ALJ found that Leviev's impairments did not meet or medically equal the severity of one of the listed impairments in the regulation. AR 31. The ALJ explained that there is no specific listing for Leviev's pseudotumor cerebri/idiopathic intracranial hypertension but found the impairment most analogous to benign brain tumors under Listing 11.05. AR 31. The ALJ found Leviev's pseudotumor cerebri/idiopathic intracranial hypertension did not meet the requirements under Listing 11.05, which requires "disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." AR 31-32. The ALJ also explained that chronic pain syndrome is not a listed impairment and evaluated that impairment along with "Tarlov cysts, degenerative disc disease of the cervical spine and well as osteoarthritis, hallux valgus and plantar fasciitis of the feet for equivalency purposes." AR 32. The ALJ found those impairments did not meet or equal listings 1.15, disorders of the skeletal spine resulting in compromise of a nerve root(s) or 1.18, abnormality of a major joint(s) in any extremity. AR 32. Finally, the ALJ found that Leviev's common variable immunodeficiency did not meet or equal Listing 14.07, immune deficiency disorders, excluding HIV. AR 32.

Prior to making a step four determination, the ALJ found that Leviev has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with modifications. AR 32. The ALJ found that Leviev could "not climb ladders, ropes, or scaffolds, [could] occasionally climb ramps and stairs, balance as that term is defined in the Dictionary of Occupational Titles (DOT), stoop, kneel, crouch, and crawl, and must avoid concentrated exposure to unprotected heights and moving machinery." AR 32 In making this determination, the ALJ found that Leviev's impairments could "reasonably be expected to cause the alleged symptoms," but that Leviev's

4

statements about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 33. Specifically, the ALJ found that the objective medical evidence demonstrated improvement with respect to Leviev's "body pain, headaches as well as vision, the well managed nature [of] her pseudotumor cerebri syndrome and her refusal to participate in previously helpful treatment for common variable immunodeficiency as well as avail herself of recommended treatment modalities." AR 39. In making her decision, the ALJ found that opinions that continued Leviev's off-work status from March 2021 to July 2022 were unpersuasive because they were inconsistent with the treatment record. AR 38. The ALJ also found the medical opinions of Dr. Schrot, Dr. Behler, Dr. Baca, Dr. Chen, and Dr. Levin unpersuasive because they were inconsistent with the treatment record or were not well supported by explanations. AR 38-39. The ALJ further found the State Agency physical consultant's assessments partially persuasive because they were "somewhat consistent" with the treatment record that showed improvements in Leviev's symptoms and "somewhat supported" by explanations, but that Leviev "would be somewhat more limited than opined." AR 39.

At step four, based on the testimony of a vocational expert, the ALJ found that Leviev could perform past relevant work as a registered nurse. AR 39-40. The ALJ found that the work did not require "performance of work-related activities precluded by the claimant's residual functional capacity. AR 39.

At step five, the ALJ considered testimony from the vocational expert and Leviev's residual functional capacity and found that Leviev would be able to perform her past relevant work as a registered nurse as actually performed. AR 40. Accordingly, the ALJ found that Leviev was not disabled as defined in the Social Security Act. *Id.*

### B. Leviev's Challenges to the ALJ's Determinations

Leviev argues that the ALJ's determinations should be reversed for three reasons. Mot. at 2. First, Leviev argues that the ALJ improperly addressed the medical opinion evidence. *Id.* at 11. Second, Leviev argues that the ALJ improperly rejected Leviev's testimony. *Id.* at 12-17. Third, Leviev argues that derivative of the ALJ's unsustainable medical findings, the ALJ's failed to pose a complete hypothetical question to the vocational expert. *Id.* at 17-18. In response, the

5

1   Commissioner argues Leviev has failed to show any error in the ALJ's determinations because the
2   ALJ reasonably discounted Leviev's subjective symptom testimony and reasonably evaluated the
3   persuasiveness of the medical opinions. *See generally* Opp.
4   The Court addresses the parties' arguments in turn.

**1. The ALJ Properly Found Dr. Levin's Medical Opinions Unpersuasive.**

Leviev argues that the ALJ improperly addressed the medical opinions from Dr. Levin. Mot. at 11. Specifically, Leviev argues that the ALJ failed to adequately address the consistency and supportability factors regarding Dr. Levin's medical opinions. *Id.* at 12. Leviev does not challenge the ALJ's evaluation of the other medical opinions. *See id.* at 11-12; Reply at 1-3.

In response, the Commissioner argues that the opinions offered by Dr. Levin regarding Leviev's ability to work were not medical opinions, and thus were "inherently neither valuable nor persuasive" under the statute and no evaluation from the ALJ is needed. Opp. at 5 (citing 20 C.F.R. § 404.1520b(c)(3)(i)). The Commissioner also argues that Dr. Levin provided a vocational determination, not a medical determination. Opp. at 5. The Commissioner further argues that the ALJ correctly found that Dr. Levin's opinions were inconsistent with the treatment record and was not well supported by explanations. *Id.*

The Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following factors: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) "other factors." 20 C.F.R. § 416.920c(a)-(c). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that "form[ed] the foundation of the [prior] treating source rule." Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853; *see also Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). The ALJ is required to explicitly address supportability and consistency in their decision. 20 C.F.R. § 404.1520c(b)(2). The ALJ's persuasiveness explanation must be supported by substantial evidence. *See Woods*, 32 F.4th at 787.

With respect to "supportability," the regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

6

opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

As an initial matter, Dr. Levin opined that Leviev "remains medically unable to work in her health care profession due to difficulty with blurring and inability to bend over." AR 1428. The Court finds that, under the statute, a statement from a medical source that a claimant is "disabled" or is not "able to work, or able to perform regular or continuing work" is "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i). Thus, the ALJ need not "provide any analysis" on those statements in her determination or decision. However, Dr. Levin also opined about Leviev's vision and ability to bend over. *See* AR 1420-28. Under the social security regulations, descriptions about a claimant's functional abilities and limitations are medical opinions, and the ALJ must evaluate their persuasiveness. 20 C.F.R. § 404.1513(a)(2)(i); *see also id.* § 404.1520b(c)(3)(v); *Woods*, 32 F.4th at 791-92.

The Court finds that substantial evidence supports the ALJ's decision that Dr. Levin's opinions were unpersuasive. With respect to "supportability," the ALJ explained that Dr. Levin's opinions were "not well supported by explanations" because they did not provide "a function-by-function assessment of the claimant's residual functional abilities." AR 39. The Court notes that Dr. Levin did not explain why Leviev could not work. *See* AR 1428. With respect to "credibility," the ALJ explained that Dr. Levin's opinions were "inconsistent with the treatment record that demonstrated improvement with respect to [Leviev's] body pain, headaches as well as vision, the well the managed nature [of Leviev's] pseudotumor cerebri syndrome and [Leviev's] refusal to participate in previously helpful treatment for common variable immunodeficiency as well as avail herself of recommended treatment modalities." Opp. at 39 (citing records).

### 2. The ALJ Provided Clear and Convincing Reasons to Discount Leviev's Subjective Testimony.

Leviev argues that the ALJ improperly rejected Leviev's testimony because the ALJ did not

1  provide the required clear and convincing reasons to discount her testimony. Mot. at 12-17. In
2  response, the Commissioner argues that the ALJ considered Leviev's testimony and reasonably
3  determined that it was not entirely consistent with the medical and other evidence of the record.
4  Opp. at 1-4.

Under the Social Security Act, the ALJ is required to consider evidence other than the medical record because subjective symptoms may suggest a higher severity of impairment than what is reflected by the objective medical record. *See* 20 C.F.R. § 404.1529(c)(3). While an ALJ may not discount a claimant's subjective complaints based solely on a lack of objective medical evidence, the ALJ "may find the claimant's allegations of severity to be not credible" based on specific findings and other evidence in the record. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."). In determining the claimant's credibility, the ALJ relied on ordinary techniques of credibility evaluation, such as (1) inconsistencies either in the testimony or between the testimony and the claimant's conduct, and (2) the medical record addressing the claimant's symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Dixon v. Saul*, 411 F.Supp.3d 837, 854 (N.D. Cal. 2019).

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)). Second, if the claimant does so and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti*, 533 F.3d at 1309 (quoting *Smolen*, 80 F.3d at 1281); *see also Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).[1]

---

[1] The Commissioner states that he "disagrees with the Ninth Circuit's 'clear and convincing reasons' standard because it deviates from the substantial-evidence standard set forth in 42 U.S.C. § 405(g)."

Leviev testified that she could not work due to headaches, blurry vision and heaviness in her eyelids. AR 55. Leviev also testified that she could not stand too long, sit too long, and needed to use the bathroom often because she was taking water pills. AR 56. Leviev testified that she could not lift more than one pound, could not do simple tasks such as open a bottle or open a door, and could not stand more than ten minutes. AR 57-58. Leviev also testified that she had to sit on a donut pillow and, even so, she could only sit 10 minutes at a time. AR 60.

The Court finds that the ALJ provided clear and convincing reasons for discounting statements about the intensity, persistence, and limiting effects of her symptoms. AR 34; *see Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014) ("the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ reviewed the medical record in detail and found that Leviev's impairment improved with treatment. *See* AR 33-37. For example, the ALJ explained that in January 2021, Leviev's doctor stated during a visit that it was doubtful that Leviev's pseudotumor cerebri syndrome was active and the provider was not overly concerned about risk to her vision at that time. AR 34 (citing Ex. 21F). The ALJ found that in March 2021, Leviev experienced moderate improvement to her foot with prescribed naproxen and the use of insoles. AR 34 (citing Ex. 6F). The ALJ found that in May 2021, Leviev's bilateral heel pain was improved with orthotics and her pseudotumor cerebri was overall controlled. AR 34 (citing Ex. 6F). The ALJ also noted that in June 2021, Leviev's back pain was better, and her medical provider described her as "fully active as well as able to carry on all pre-disease performance without restriction." AR 34 (citing Ex. 6F, Ex. 1F). The ALJ also found, based on medical records from July 2021 to December 2023, that Leviev's walking ability improved, that Leviev was progressing well in her low back and hip pain, that Leviev's pseudotumor cerebri syndrome remained overall controlled, and that Leviev had 20/25 vision and full visual field in both eyes. AR 34 (citing Exs. 6F, 5F, 9F, 12F, 22F). In light of medical records showing Leviev's symptoms were generally

---

Opp. at 1 n.1. For the purpose of this order, the Court applies the Ninth Circuit's "clear and convincing reasons" standard because the Commissioner applied the same standard in his opposition. *See* Opp. at 1 (citing *Rollins v. Massanari*, 261 F.3d 853, 859 (9th Cir. 2001)).

improved with treatment, the ALJ reasonably found that the Leviev's symptoms were not disabling. *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (holding the ALJ correctly found "overall improvement are inconsistent with [claimant's] testimony as to the severity of her impairments."); *Dixon*, 411 F.Supp.3d at 854 (quoting *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017)) ("Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability").

The Court also finds that the ALJ provided clear and convincing reasons for finding that Leviev's described daily activities were inconsistent with the level of symptoms and limitations shown in her subjective testimony. The ALJ found that Leviev was able to do her own grocery shopping, so long as the items purchased were light. AR 35 (citing AR 259-63). The ALJ explained that in October 2022, Leviev did light activities on an average day. AR 35 (citing AR 259-63). The ALJ also explained that Leviev stated she could only lift two to three pounds but admitted that she was able to carry eggs, bread and milk. AR 35 (citing AR 259-63). It appears that Leviev disagrees with the ALJ's interpretation of the record. Mot. at 13. While the ALJ's interpretation "may not be the only reasonable one," the Court finds that the ALJ provided clear and convincing reasons by explaining the level and extent of Leviev's daily activities as reflected in the record. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding the ALJ's interpretation of claimant's daily activity was reasonable and supported by substantial evidence despite the claimant's "testimony was somewhat equivocal" about her daily activities).

Leviev argues that the ALJ erred in citing "the objective medical evidence, generally, as contradicting Leviev's alleged limitations," but failed to identify particular findings that were inconsistent with the specific functional deficits described by Leviev. Mot. at 14 (citing AR 334, 435, 1248). The Court is not persuaded by Leviev's argument. Here, the ALJ provided clear and convincing reasons for discounting Leviev's testimony because the treatment record demonstrated improvement with respect to her body pain, headaches and vision, her pseudotumor cerebri syndrome was well managed, and Leviev refused to "participate in previously helpful treatment for common variable immunodeficiency as well as avail herself of recommended treatment modalities." AR 38 (citing Exs. 1F, 5F, 6F, 9F, 10F, 11F, 12F, 18F, 21F, 22F). In addition, the ALJ considered

medical opinions from Dr. Schrot, credited the portions that recorded Leviev's progress, but discounted the portions concerning Leviev's off work status for being inconsistent with the treatment record and the portions that did not render medical opinions. AR 38 (citing Exs. 6F, 22F, and 20 CFR 404.1527(e)(2)). The ALJ also considered medical opinions from Dr. Behler but discounted the portions that were inconsistent with medical records demonstrating improvement with IVIG infusion. AR 38. The ALJ also explained those portions of Dr. Behler's opinions were unpersuasive because "the treatment records failed to show any exacerbation of the claimant's other medical conditions while receiving IVIG infusions." AR 38 (citing Exs. 1F, 5F, 6F, 9F, 10F, 11F, 12F, 18F, 21F, 22F). As to Dr. Baca's opinions, AR 1052-55, the ALJ found the letter "does not equate to a medical opinion" but the ALJ nonetheless "considered the objective findings contained therein." AR 38. As to Dr. Levin's medical opinions, as discussed above, the ALJ did not err in finding them unpersuasive. Thus, the ALJ provided clear and convincing reasons to discount Leviev's subjective testimony based on objective medical evidence. *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (holding that an ALJ may consider factors including "unexplained or inadequately explained, failure to seek treatment or follow a prescribed course of treatment") (citation omitted).

Because the ALJ articulated clear and convincing reasons to conclude that Leviev's testimony was not entirely consistent with medical record, the Court finds that the ALJ properly rejected Leviev's testimony. *See Burch*, 400 F.3d at 681 ("[medical evidence] is a factor that the ALJ can consider in his credibility analysis"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.") (internal quotation omitted).

### 3. The ALJ Properly Relied on the Vocational Expert Testimony

Leviev argues that the Court should reverse the ALJ's determination at step five because she relied on the vocational expert's testimony that was based on an incomplete hypothetical question. Mot. at 18. Specifically, Leviev argues that the ALJ omitted Leviev's credible allegations and the limitations assessed by Dr. Levin. *Id.* Leviev contends that the expert's determination had no evidentiary value. *Id.*

11

1	The Commissioner argues that Leviev's challenge to the ALJ's step five finding fails because Leviev's argument at this step is based on her other arguments. Opp. at 6.

3	The Court disagrees with Leviev's argument that the ALJ improperly relied on vocational expert's testimony that was based on an incomplete hypothetical question. The Court finds that Leviev's contention is based on her challenge that the ALJ improperly rejected Dr. Levin's opinions and Leviev's subjective testimony. *See* Mot. at 18-19. As discussed above, the Court finds that the ALJ's rejection of Dr. Levin's opinions is supported by substantial evidence in the record, and the ALJ's provided clear and convincing reasons in discounting Leviev's subjective testimony. Because the hypothetical posed to the vocational expert is based on the ALJ's correct RFC finding, the ALJ did not err in considering the vocational expert's testimony. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (finding the ALJ did not err in his RFC finding and rejecting a claimant's challenge to an ALJ's step five analysis on the basis that the vocational expert's testimony was not based on an incomplete hypothetical posed by the ALJ). Accordingly, the Court finds that Leviev has failed to identify any reversible error in the ALJ's step five analysis.

## IV.     ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Leviev's motion for summary judgment is DEINED.  The determination of the Commissioner is AFFIRMED.

**IT IS SO ORDERED.**

Dated:  August 21, 2025

_____
BETH LABSON FREEMAN
United States District Judge